24CA0349 Peo in Interest of MGO 09-05-2024 COLORADO COURT OF APPEALS Court of Appeals No. 24CA0349 Montrose County District Court No. 21JV32 Honorable D. Cory Jackson, Judge The People of the State of Colorado, Appellee, In the Interest of M.G.O, a Child, and Concerning M.O., Appellant. JUDGMENT AFFIRMED Division I Opinion by JUDGE J. JONES Lipinsky and Sullivan, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced September 5, 2024 Martha Whitmore, County Attorney, Julie R. Andress, Deputy County Attorney, Montrose, Colorado, for Appellee Josie Burt, Guardian Ad Litem Lindsey Parlin, Office of Respondent Parents’ Counsel, Denver, Colorado, for Appellant 
1 ¶ 1 In this dependency and neglect proceeding, M.L.O. (mother) appeals the judgment terminating her parent-child legal relationship with M.G.O. (the child). We affirm. I. Background ¶ 2 In May 2021, the Montrose County Department of Human Services filed a petition in dependency and neglect concerning the then-four-month-old child. The Department alleged concerns about mother’s “erratic behavior” and possible methamphetamine use. The Department noted that mother had a significant history of drug use that had led to the termination of her parental rights as to two older children. The juvenile court granted temporary legal custody to the Department, and the child was placed in foster care. ¶ 3 The juvenile court adjudicated the child dependent or neglected. The court adopted a treatment plan requiring mother to cooperate with the Department, attend supervised family time, engage in substance abuse treatment, complete a capacity to parent evaluation and any recommended mental health treatment, and establish stability for her family. 
2 ¶ 4 The Department later moved to terminate mother’s parental rights. After an evidentiary hearing, the juvenile court granted the motion. ¶ 5 Mother appealed, and a division of this court reversed the judgment and remanded for a new termination hearing because mother had been deprived of her right to representation at the first hearing. See People in Interest of M.G.O., (Colo. App. No. 22CA1404, Sept. 7, 2023) (not published pursuant to C.A.R. 35(e)). ¶ 6 About four months after remand, the juvenile court held a second termination hearing, at which mother was represented by counsel. After considering the evidence, the court granted the termination motion. II. Discussion ¶ 7 Mother’s sole contention on appeal is that the juvenile court erred by finding that she could not become fit within a reasonable amount of time. We don’t see any error. A. Standard of Review ¶ 8 Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law because it involves application of the termination statute to evidentiary facts. People in 
3 Interest of S.R.N.J-S., 2020 COA 12, ¶ 10. We review the court’s factual findings for clear error, but we review de novo the court’s legal conclusions based on those facts. Id. ¶ 9 The credibility of the witnesses, as well as the sufficiency, probative effect, and weight of the evidence, and the inferences and conclusions to be drawn from the evidence, are within the juvenile court’s province. People in Interest of A.J.L., 243 P.3d 244, 249-50 (Colo. 2010). We don’t reweigh the evidence or substitute our judgment for that of the juvenile court. People in Interest of K.L.W., 2021 COA 56, ¶ 62. B. Applicable Law ¶ 10 The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent hasn’t complied with an appropriate, court-approved treatment plan or the plan hasn’t been successful; (3) the parent is unfit; and (4) the parent’s conduct or condition is unlikely to change within a reasonable time. § 19-3-
604(1)(c), C.R.S. 2024. 
4 ¶ 11 An unfit parent is one whose conduct or condition renders the parent unable or unwilling to give a child reasonable parental care. People in Interest of S.Z.S., 2022 COA 133, ¶ 23. “Reasonable parental care requires, at a minimum, that the parent provide nurturing and protection adequate to meet the child’s physical, emotional, and mental health needs.” S.R.N.J-S., ¶ 9. A parent’s noncompliance with a treatment plan generally “demonstrates a lack of commitment to meeting the child’s needs and, therefore, may also be considered in determining unfitness.” People in Interest of D.P., 181 P.3d 403, 408 (Colo. App. 2008). ¶ 12 A parent must have a reasonable amount of time to work on a treatment plan before the juvenile court may terminate the parent’s parental rights. People in Interest of D.Y., 176 P.3d 874, 876 (Colo. App. 2007). Periods as short as five to nine months have been held to be sufficient to comply with a treatment plan.   People in Interest of A.J., 143 P.3d 1143, 1152 (Colo. App. 2006). ¶ 13 The determination of a reasonable period is necessarily fact specific, and, thus, what constitutes a reasonable time to comply with a treatment plan may vary from case to case. D.Y., 176 P.3d at 
5 876. But a reasonable time isn’t an indefinite time, and it must be determined by considering the physical, mental, and emotional conditions and needs of the child. S.Z.S., ¶ 24. In determining whether a parent’s conduct or condition is likely to change and whether the parent can become fit within a reasonable time, the juvenile court may consider several factors, including (1) whether any change occurred during the dependency and neglect proceeding; (2) the parent’s social history; and (3) the chronic or long-term nature of the parent’s conduct or condition. K.D. v. People, 139 P.3d 695, 700 (Colo. 2006). And as in this case, when a child is under six years old at the time of filing the petition in dependency and neglect, the juvenile court must also consider the expedited permanency planning (EPP) provisions, which require that the child be placed in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2024; see also S.Z.S., ¶ 25. C. Analysis ¶ 14 The juvenile court considered whether mother could become fit within a reasonable amount of time and ultimately concluded that 
6 she could not. The court first determined that because the case was subject to the EPP provisions, it was “obliged to find permanency for the child in an expedited manner.” The court said that it was mindful of the EPP provisions throughout its ruling in “this particularly old case.” And the court found that the child had been in foster care for more than fifteen of the most recent twenty-
two months. ¶ 15 The court found that, when the case was opened, the Department was concerned that mother “was acting erratically and that [the child] was unsafe because of that behavior” and that mother tested positive for methamphetamine and THC at that time. It also found that the safety concerns about mother’s erratic behavior persisted throughout the case, as shown by her continued “strange” and “unsubstantiated” claims regarding the birth of multiple babies at one time and people breaking into her home and drugging her. The court also found that, although the case had been open “for an extraordinary amount of time,” mother had used methamphetamine “as recently as two and a half months [before the hearing]” and that her “very recent use show[ed] that substance 
7 abuse [was] still a persistent issue.” The court concluded that “the same issues that started this case persist[ed]” and were “getting worse.” ¶ 16 The court further found that, although mother’s treatment plan was appropriately designed to rehabilitate her, and the Department “put in place supports and made multiple referrals . . . [for] the services offered in the treatment plan,” mother didn’t engage in the services or reasonably comply with her treatment plan. The court found that mother had a “history of substance abuse” and the Department’s reasonable efforts had failed to rehabilitate her. ¶ 17 Mother had been involved in a prior case that had resulted in termination of her parental rights and a judgment of adjudication had been entered against mother in a pending case. The court concluded that mother’s conduct wasn’t likely to change within a reasonable amount of time based on her “failure to make progress throughout this lengthy case” and the fact that there was “an adjudication in the new child’s case just last month.” ¶ 18 The record supports these findings. 
8 ¶ 19 The child, who was only four months old when the Department opened the case, had turned three years old by the time of the termination hearing. At that point, the child had been out of the home for about two years and nine months. The caseworker opined that permanency was important for the child “to be able to develop emotionally, physically, and mentally in a healthy way” and that termination was in the child’s best interests based, in part, on the child’s age. Although the caseworker didn’t further explain how the child’s young age affected her need for permanency, the General Assembly has recognized that “children undergo a critical bonding and attachment process prior to the time they reach six years of age” and that “a child who has not bonded with a primary adult during this critical stage will suffer significant emotional damage which frequently leads to chronic psychological problems and antisocial behavior when the child reaches adolescence and adulthood.” § 19-1-102(1.6), C.R.S. 2024. ¶ 20 Next, over two years had passed between the adoption of mother’s treatment plan and the termination hearing. Even excluding the timeframe between the first judgment terminating 
9 mother’s rights and the mandate requiring a new termination hearing, mother had over a year to work on the objectives in her treatment plan and engage in the services offered by the Department. But at the time of the second termination hearing, she had not successfully resolved the concerns that brought the child to the Department’s attention. ¶ 21 The first caseworker, who was assigned to the case through the first termination hearing, testified that when the case was opened, the Department was concerned about mother’s mental health and well-being based on allegations she made to the police about people breaking into her home to inject her with drugs, sexually assault her, and urinate on the child. The caseworker also testified that, at that time, a hair follicle test showed that the child was positive for methamphetamine and THC, and mother tested positive for methamphetamine and amphetamine. The caseworker testified that, while mother engaged in about a month of therapy, she was unsuccessfully discharged from that therapy and didn’t complete any other mental health treatment. She also didn’t complete a substance abuse evaluation or consistently take 
10 requested drug tests. The caseworker testified that during his time on the case, mother didn’t substantially comply with any of the objectives in her treatment plan and didn’t show any improvement in her ability or willingness to comply with the plan. And the caseworker opined that the behavior and safety concerns identified at the beginning of the case were present throughout his time working on the case. ¶ 22 The second caseworker, who was assigned after a division of this court remanded the case for a new termination hearing, testified that she provided mother with another copy of the treatment plan when the case was remanded. She made a referral for mother to complete her capacity to parent evaluation, and although the provider set up three appointments, mother didn’t attend any of them. The caseworker also testified that mother tested positive for methamphetamine in November 2023, had not submitted to any drug tests since that time, and had still not completed a substance abuse evaluation. The caseworker testified that mother had not substantially complied with any of the objectives in her treatment plan and opined that none of the safety 
11 concerns identified at the beginning of the case had been resolved. The caseworker said that, based on mother’s recent claims that she had given birth to multiple children at the same time and that the Department had “stolen” one of those children, she was more concerned with mother’s behavior at the time of the hearing than at the beginning of the case. ¶ 23 The first caseworker also testified that the Department’s concerns about mother’s mental health and substance abuse issues dated back to 2018, when it opened a previous case involving one of mother’s older children based on those concerns. And the second caseworker testified that, about a month before the termination hearing, a court adjudicated another one of mother’s children dependent or neglected in an ongoing case opened after this one. The caseworker noted that her concerns about mother’s mental health were based, in part, on mother’s testimony during that recent adjudicatory hearing. ¶ 24 Mother argues that because she maintained contact with the caseworker, had stable housing, attended some family time and treatment, and tested positive for methamphetamine “very few” 
12 times throughout the case, she “had proven she could sufficiently address her treatment plan objectives . . . [if] additional time had been provided.” But mother doesn’t explain how these facts, all of which the juvenile court considered, negated both caseworkers’ opinions that mother had not been able to resolve the safety concerns that existed at the beginning of this case and that mother’s conduct was unlikely to change within a reasonable amount of time. And, although mother testified, and now argues, that transportation was a barrier throughout the case, both caseworkers testified that mother never identified any specific barriers to them, such as transportation. Notably, the juvenile court found that mother’s testimony was not generally credible but that the caseworkers’ testimony was credible. See S.Z.S., ¶ 10 (“The credibility of the witnesses — as well as the sufficiency, probative effect, and weight of the evidence and the inferences and conclusions to be drawn from it — is within the juvenile court’s province.”). ¶ 25 In sum, the juvenile court determined that mother could not become fit within a reasonable time by considering the evidence 
13 showing mother’s partial compliance and weighing it against the contrary evidence and the child’s needs. Because the record supports the court’s determination, we decline to disturb the judgment. III. Disposition ¶ 26 The judgment is affirmed. JUDGE LIPINSKY and JUDGE SULLIVAN concur.